**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

———————————————————————

**AUREL SMITH**

                              **Plaintiff,**

              **v.**                                                    **9:11-CV-0020**
                                                                        **(MAD/DRH)**

**KENNETH PERLMAN, Deputy Commissioner of**
**Programs, NYS Department of Correctional**
**Services; MARK LEONARD, Director of Ministerial**
**Services, NYS Department of Correctional Services;**
**DANIEL MARTUSCELLO, Superintendent of**
**Coxsackie Correctional Facility; CAPTAIN R.**
**SHANLEY, Captain, Acting Deputy Superintendent**
**of Security at Coxsackie Correctional Facility;**
**SALTSMAN, Correctional Officer, Coxsackie**
**Correctional Facility; and MR. J. ADAMS[1],**
**Correctional Officer, Coxsackie Correctional Facility,**

                              **Defendants.**

———————————————————————

**APPEARANCES:**                                        **OF COUNSEL:**

AUREL SMITH
02-A-6279
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13201
*Plaintiff Pro Se*

HON. ERIC T. SCHNEIDERMAN                    Christopher W. Hall., Esq.
Attorney General for the State of New York
The Capitol
Albany, New York 12224-0341
*Attorney for Defendants*

———————————————

    [1] Mr. J. Adams correct first name is "Todd".

**MAE A. D'AGOSTINO, U. S. DISTRICT JUDGE**

**MEMORANDUM-DECISION AND ORDER**
**INTRODUCTION**

In this *pro se* action under 42 U.S.C. § 1983, plaintiff, an inmate in the custody of the

New York State Department of Correctional and Community Supervision ("DOCCS"), claims

that defendants violated § 3 of the Religious Land Use and Institutionalized Persons Act of 2000

("RLUIPA"), 42 U.S.C. § 2000cc–1, the Free Exercise Clause of the First Amendment and

plaintiff's rights to Equal Protection under the Fourteenth Amendment.  In addition, plaintiff

asserted state law claims against defendants Martuscello, Saltsman and Adams.  Defendants'

moved to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 24) and

plaintiff cross moved to amend the complaint. (Dkt. No. 27).  The motions were referred to

United States Magistrate Judge David R. Homer for a Report-Recommendation pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Rule 72.3( c ).  Magistrate Judge Homer issued a Report-

Recommendation (Dkt. No. 33) recommending that the motion to dismiss be granted in part and

denied in part and further, recommending that plaintiff's cross motion to amend be denied.[2]

Plaintiff and defendants filed specific objections to the Report-Recommendation. (Dkt.

Nos. 34 and 36).  In view of the objections and pursuant to 28 U.S.C. § 636(b)(1), this Court

conducts a *de novo* review of these issues.   The Court reviews the remaining portions of the

Report-Recommendation for clear error or manifest injustice.  *See Brown v. Peters*, 1997 WL

599355, at *2-3 (N.D.N.Y.) *aff'd without op.*, 175 F.3d 1007 (2d Cir. 1999).  After the

appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

---

[2] The Clerk is directed to append Judge Homer's Report-Recommendation to this decision, and familiarity is
presumed. (Dkt. No. 33).

**BACKGROUND**

**I.      The Amended Complaint[3]**

At the relevant time, plaintiff was incarcerated at Great Meadow Correctional Facility ("GMCF") and Coxsackie Correctional Facility ("CSF").  Plaintiff is a Muslim of orthodox (or Sunni) belief and practice.  Two of the holy days observed by Muslims are the two 'Eids ('Eidul-Fitr and 'Eidul Adhaa).  Both 'Eids are observed similarly and include a special prayer, sermon, a religious feast, family attendance and charitable acts to the poor.   Family/guest attendance and participation is an integral part of the 'Eids.  Plaintiff's religion also obligates him to attend weekly congregate services on Friday afternoons known as "Jum'ah".  Jum'ah services include a religious sermon given by a Muslim Chaplain and a special prayer.  At CSF, Jum'ah services are regularly scheduled to occur on Friday afternoons in the gymnasium.  Plaintiff regularly attended such services while confined in the general population at CSF.   Plaintiff also regularly attended Islamic Studies (Ta'lim) classes on Saturday afternoons at CSF.  Attendance at these classes was on a "list basis" and prisoners would receive a "call out slip/pass".

**A.      Family/Guest Participation in the 'Eids**

From 1982 until December 2007, DOCCS officials accommodated family/guest attendance and participation in the 'Eids.  In December 2007, plaintiff claims that officials, "abruptly and without notice" limited the Muslim inmates to one family event per year.  Accordingly, only one of the 'Eids could be celebrated with the family members/guests of the inmates.  Plaintiff alleges that no such limitations were placed on Native American services which allows family participation.  To wit, DOCCS continues to accommodate at least nine holy

---

[3] In reviewing the amended complaint, as well as plaintiff's other submissions, the Court accepts as true all factual allegations and draws all reasonable inferences in plaintiff's favor for purposes of the pending motion. *See ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

days of Native American observance and allowed family/guest participation.  Upon learning of

the change in policy, in December 2008 (while incarcerated at GMCF), plaintiff wrote a letter to

Commissioner Fischer regarding the "religious violations".[4]  On January 15, 2009, defendant

Perlman[5] responded to plaintiff's letter advising plaintiff to file a formal grievance at the facility

level.[6]  In December 2008, plaintiff filed a grievance and submitted letters to DOCCS officials

seeking intervention.  The Inmate Grievance Review Committee ("IGRC") deadlocked on the

issue and plaintiff's grievance was forwarded to the GMCF Superintendent.  Superintendent

Williams denied plaintiff's grievance noting:

> per ministerial services[7], Central Office allows one family event per
> year, with the exception of the Native American faith group.  A Native
> American religious ceremony is observed with a family meal.  The
> other religions do not require a family meal as part of the religious
> observance.

Plaintiff appealed this decision to the Central Office Review Committee ("CORC").

CORC upheld the Superintendent's denial.[8]  On January 20, 2009, plaintiff wrote a letter to

Perlman seeking to resume family participation in the 'Eid holy days.  Plaintiff received a

response to his letter to Perlman from Karen Bellamy, Director of the Inmate Grievance Program.

On January 31, 2009, plaintiff wrote a letter to the Commissioner regarding violations of his

religious rights.  On March 9, 2009, plaintiff received a letter from Perlman which stated, "there

are no plans at the current time to reinstate two religious family events".[9]

---

[4] The letter is part of the record herein.

[5] Perlman was Deputy Commissioner for Program Services for DOCCS.

[6] The letter is part of the record herein.

[7] Defendant Leonard was the Director of Family and Ministerial Services for DOCCS.

[8] Plaintiff's grievance, the IGRC response and the CORC decision are part of the record herein.

[9] The letters are part of the record herein.

**B.      Weekly Congregate Religious Services**

In January 2009, plaintiff was transferred to CSF.  In May 2009, plaintiff claims he was harassed by his housing unit officer, C.O. Stevens.[10]  Plaintiff filed grievances against C.O. Stevens and plaintiff alleges that as a result, C.O. Stevens issued plaintiff a misbehavior report for non-compliance to cell standards.[11]  Plaintiff claims that, in CSF, once a prisoner is issued a misbehavior report, the inmate is transferred from the general population to keeplock housing, even for pre-hearing confinement.  In this instance, however, plaintiff was not placed in keeplock for Steven's non-compliance report.  Plaintiff claims that when Stevens realized that plaintiff was not placed in keeplock, Stevens issued another misbehavior report claiming that plaintiff verbally threatened him.[12]  After this report was issued, plaintiff was placed in keeplock pending a Tier 2 disciplinary proceeding.   On August 1, 2009, plaintiff was found guilty of the violations and placed in keeplock for 30 days until September 1, 2009.

DOCS Directive 4202 required inmates in keeplock to notify officials, in writing, upon commencement of keeplock confinement, if the inmate wished to attend regularly scheduled congregate religious services.  Plaintiff admits that he did not file such a request to attend services on the first Friday in August 2009 but that he filed three separate requests to attend services on the remaining three Fridays in August 2009.  Plaintiff addressed each of request to defendant Martuscello.  Martuscello was the Deputy Superintendent of Security at CSF and Acting Superintendent in August 2009.  Plaintiff alleges that Martuscello was, "responsible for either deciding plaintiff's requests to attend congregate religious services while on keeplock , or

---

[10] Stevens is not a defendant.

[11] The grievances and misbehavior report are not part of the record herein.

[12] The misbehavior report is not part of the record herein.

designat[ing] a subordinate to so decide plaintiff's requests".   Martuscello forwarded plaintiff's requests to defendant Shanley.  Shanley was the Captain at CSF and Acting Deputy Superintendent of Security in August 2009.  Shanley denied plaintiff's requests explaining that plaintiff was given a misbehavior report for threats.  Plaintiff claims that there was no further explanation for the refusal to allow him to attend services.

Plaintiff wrote letters to Martuscello contending that Shanley's denials were insufficient and filed grievances regarding the denials.  Plaintiff's first grievance was denied.  Plaintiff appealed the denial to the Superintendent (Martuscello) who upheld the IGRC decision.  CORC affirmed the decision with regard to the first grievance.  Plaintiff's second grievance was accepted by IGRC and CORC.[13]

## C.      Saturday Religious Study

On February 6, 2010, while still incarcerated at CSF, plaintiff was scheduled to attend a Ta'lim class at 12:30 p.m.  Plaintiff received a call-out slip and his name was on the attendance list.  At that time, plaintiff was housed in the A-3 unit and his housing officers were C.O. Saltsman and C.O Adams.  At 12:30 p.m., plaintiff stopped Saltsman as he was passing plaintiff's cell to inform him of his "callout".  Saltsman reviewed the call out slip but did not release plaintiff from his cell.  Plaintiff also informed C.O. Adams of his call-out and while Adams verbally acknowledged that studies were being held and did not dispute that plaintiff was scheduled to attend, he did not release plaintiff.  Plaintiff missed the religious studies class.  Plaintiff filed a grievance regarding the matter.  Plaintiff claims he was interviewed regarding the matter but his grievance was denied.[14]

---

[13] Plaintiff's requests, letters, Shanley's denials, plaintiff's grievances and appeals are not part of the record herein.

[14] Plaintiff's grievance and the subsequent denial are not part of the record herein.

**D.      Causes of Action**

On January 7, 2011, plaintiff filed an amended complaint asserting eight causes of action as follows: In Counts One, Two and Three, plaintiff claims that Perlman and Leonard violated his rights to Equal Protection, his First Amendment rights and his right to free exercise of religion pursuant to the RLUIPA because the DOCCS policy limited the number of annual religious family events for Muslim prisoners while Native American inmates were allowed nine such events.  In Counts Four and Five, plaintiff claims that Martuscello and Shanley violated his First Amendment rights, his rights pursuant to the RLUIPA and his Fourteenth Amendment right to Equal Protection when they refused to allow plaintiff to attend weekly religious services while plaintiff was in keeplock.  In Count Six, plaintiff alleges a state law claim against Martuscello for negligent supervision.  In Count Seven, plaintiff claims that Saltsman and Adams violated his First Amendment rights and rights under the RLUIPA when they failed to allow him to attend religious studies on February 6, 2010.   In Count Eight, plaintiff alleges state law negligence claims against Saltsman and Adams. (Dkt. No. 5).

**II.      Report-Recommendation**

On August 12, 2011, defendants moved to dismiss arguing: (1) that Perlman, Leonard and Martuscello lacked personal involvement; (2) plaintiff's religious claims against Martuscello, Shanley, Saltsman and Adams should be dismissed for failure to state a claim; (3) the equal protection claims against Martuscello and Shanley should be dismissed for failure to state a

claim; and (4) the negligence claims are barred by Corrections Law § 24.[15]  Plaintiff opposed the motion and cross moved to amend the complaint.

On February 28, 2012, Magistrate Judge Homer recommended that the Court grant in part and deny in part defendants' motion to dismiss.  Magistrate Homer recommended that defendants' motion to dismiss be granted as to (1) plaintiff's First Amendment and RLUIPA claims against Martuscello and Shanley for denying plaintiff attendance at Friday religious services; (2) plaintiff's First Amendment and RLUIPA claims against Saltsman and Adams for denying plaintiff attendance at Saturday religious study group; (3) plaintiff's equal protection claim against Martuscello and Shanley for precluding plaintiff and other keeplock inmates from attending religious services; and (4) plaintiff's negligence claims against Martuscello, Saltsman and Adams.  Magistrate Judge Homer also found that plaintiff did not establish personal involvement on the part of Martuscello.  Magistrate Judge Homer also recommended denying plaintiff's motion to amend.  Plaintiff sought to add New York State as a defendant and Magistrate Judge Homer reasoned that such an amendment would be futile under the Eleventh Amendment.

**III.    Objections**

Both parties have objected to the Report-Recommendation.  Defendants argue that Judge Homer erred when he failed to dismiss all claims against Leonard due to lack of personal involvement.  Specifically, defendants object to the reliance upon exhibits attached to plaintiff's complaint as evidence of Leonard's personal involvement.  Plaintiff also objects to the Report-

---

[15] Defendants did not move to dismiss plaintiff's First Amendment claims, RLUIPA claims or Equal Protection claims based upon the family guest attendance policy against Perlman and Leonard for failure to state a claim.  Rather, defendants relied solely on the "personal involvement" argument in support of dismissing Counts One, Two and Three of the amended complaint.

Recommendation on various grounds.  Plaintiff argues that Magistrate Judge Homer erred when he found: (1) that Martuscello lacked personal involvement; (2) plaintiff's religious rights were not substantially burdened when he was denied the right to attend three consecutive Jum'ah services; (3) defendants asserted a legitimate penological interest sufficient to defeat plaintiff's First Amendment claims and RLUIPA claims against Martuscello and Shanley; (4) plaintiff failed to establish the necessary elements for a Fourteenth Amendment Equal Protection claim against Martuscello and Shanley.

## DISCUSSION

### I.      Standard on Motion to Dismiss

In a rule 12(b)(6) motion to dismiss, the court must accept as true all of the factual allegations in the complaint, which is deemed to include any written instrument attached to the complaint as an exhibit, any materials incorporated into it by reference, and any other documents that are integral to it.  *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted). Moreover, the court must draw all reasonable inferences from those factual allegations in the plaintiff's favor.  *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir.2010) (quotation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to it nor incorporated by reference into the pleading.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc*., 282 F.3d 147, 152–53 (2d Cir. 2002)).

So read, the complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim to relief is

9

plausible on its face "when the Plaintiff pleads fact[s] ... that allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citation omitted).  When a dismissal is sought against a *pro se* litigant, the court will afford the non-movant special solicitude.  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir.2 006) (quotation and citations omitted).  The submissions of a *pro se* litigant are to be construed liberally and interpreted "to raise the strongest arguments that they suggest."  *Id.* at 475 (internal quotation and citations omitted).

Courts are reluctant, "to dismiss [*pro se*]  complaints at an early stage of the proceedings. *McEachin v. McGuinnis*, 357 F.3d 197, 201 (2d Cir. 2004) (noting the difficulties attendant to appellate proceedings where the defendant has not answered the plaintiff's allegations).  The issue at the dismissal stage "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir.1998).  Dismissal will only be granted by the court if it "appears beyond doubt that plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Branham v. Meachum*, 77 F.3d 626, 628 (2d Cir. 1996).   Here, defendants filed the motion to dismiss but have not yet answered the amended complaint.


## II.     Personal Involvement

Defendants moved to dismiss all claims against Perlman, Leonard and Martuscello based upon lack of personal involvement.   "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation and citations omitted).  "[W]hen monetary damages are sought under § 1983, the [ ] doctrine of respondeat superior does not

suffice and a showing of some personal responsibility of the defendant is required." *Id.* (quotation omitted). There is a sufficient showing of personal responsibility of a defendant if (1) the defendant directly participated in the alleged constitutional deprivation; (2) the defendant is a supervisory official who failed to correct the wrong after learning about it through a report or appeal; (3) the defendant is a supervisory official who created a policy or custom under which the constitutional deprivation occurred, or allowed such a policy or custom to continue; or (4) the defendant is a supervisory official that was grossly negligent in managing subordinates who caused the constitutional deprivation. *See Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.1986) (citations omitted).

A.     **Perlman**[16]

       In the amended complaint, plaintiff alleges that he received two letters from Perlman dated January 15, 2009 and March 9, 2009 regarding the policy of limiting Muslim family events. Plaintiff annexed both letters as exhibits to his correspondence.  *See* Am. Cmplt., Exs. E and O. Perlman also is the "approving authority" on Directive 4202 entitled Religious Programs and Practices and the author of a Memorandum distributed to Superintendents and Deputy Superintendents for Program Services regarding the Religious Calendar.  *See id.* at Exs. P and S. At this stage, plaintiff has alleged sufficient facts regarding Perlman's involvement with the alleged constitutional issues.  The Court has reviewed Magistrate Judge Homer's reasoning and conclusions on this issue and finds no clear error.  Accordingly, this portion of the Report-Recommendation is adopted and defendants' motion to dismiss on this basis is denied.

---

[16] Defendants do not object to the recommendation denying Perlman's motion to dismiss for lack of personal involvement.

**B.      Leonard**

Plaintiff alleges that he wrote to Leonard but did not receive a response from him.

Plaintiff also claims that Leonard, "personally told Sgt. D. Williams that amongst the reasons for

reducing family attendance accommodation from the ['Eids] observance is that family

participation is not mandatory for it's observance".  Pltf. Am. Cmplt. at para. 41.  In support,

plaintiff annexed Superintendent Williams' January 22, 2009 response to his grievance to his

amended complaint.  *Id.* at Ex. I.   As noted above, Williams denied plaintiff's grievance after

consulting with Ministerial Services.  At the relevant time, Leonard was the Director of

Ministerial Services.  At this early stage, plaintiff has sufficiently alleged Leonard's personal

involvement in the alleged constitutional violations.  *Pugh v. Goord*, 571 F.Supp.2d 477, 514

(S.D.N.Y. 2008) (the plaintiff sufficiently alleged personal involvement on the part of defendant

Leonard as personally involved in the denial of separate services to Shi'ites because he made

"certain contributions" to "formulation of policy," despite the fact that he was not "the ultimate

authority.")  Accordingly, the Court adopts this portion of the Report-Recommendation and

denies Leonard's motion to dismiss due to lack of personal involvement.

**C.      Martuscello**

Plaintiff allege that Martuscello was personally involved in his constitutional violations

because he: (1) failed to respond to plaintiff's letters, (2) forwarded plaintiff's requests to

Shanley, (3) denied plaintiff's grievances; and (4) was in a position in the chain of command.

Magistrate Judge Homer found that plaintiff's allegations were insufficient to establish personal

involvement.  Plaintiff objects to Magistrate Judge Homer's findings arguing that Martuscello,

"had the ability to remedy the wrongs now complained of although such wrongs occurred by his

subordinate" and that he, "allowed the offending conduct to continue without any action upon

plaintiff's complaints".  Moreover, plaintiff claims that when Martuscello was Deputy Superintendent of Security, he maintained the custom of, "not allowing keeplocked inmate attendance at religious service, in an arbitrary and blanketed fashion".  Finally, plaintiff alleges that Martuscello was, "placed on notice and failed to act in any way . . . simply allowed the violations to continue to occur".  *See* Pl. Obj. at p. 2-3.

While allegations of Martuscello's failure to respond to plaintiff's letters, his denial of grievances and his position in the chain of command are insufficient to establish personal involvement, liberally construing the amended complaint, plaintiff has also alleged that Martuscello created an unconstitutional policy, or at least allowed such a policy to continue.  This suffices to state a claim against Martuscello as the individual within GMCF for creating and continuing department-wide policies.  *See Williams*, 781 F.2d at 321.  Defendants' motion to dismiss plaintiff's federal claims against Martuscello due to lack of personal involvement is denied.

## III.     Claims Against Martuscello and Shanley

In Counts Four and Five, plaintiff alleges that Martuscello and Shanley violated his rights under the RLUIPA, the First Amendment and the Fourteenth Amendment when they refused to allow plaintiff to attend three consecutive Friday services while in keeplock.

## A.     First Amendment

The First Amendment to the United States Constitution guarantees the right to free exercise of religion.  U.S. Const. Amend. I   Inmates are guaranteed the right to participate in congregate religious services under most circumstances.  *See, e.g., Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir.1993) (citing cases).  To assess a free exercise claim, a court must

determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective. *Farid v. Smith*, 850 F.2d 917, 925 -926 (2d Cir. 1988).   Here, defendants do not claim that plaintiff's beliefs are not sincerely held.

"[A] prisoner mounting a free-exercise challenge must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin*, 467 F.3d at 274–75.  In order to be considered a "substantial burden," the plaintiff "must demonstrate that the government's action pressure[d] him to commit an act forbidden by his religion or prevent[ed] him from engaging in conduct or having a religious experience mandated by his faith." *Smith v. Artus*, 2010 WL 3910086, at *11 (N.D.N.Y. 2010) (citing *Muhammad v. City of New York Dep't of Corr.*, 904 F.Supp. 161, 188 (S.D.N.Y.1995) (citations omitted)). The burden must be more than an inconvenience, it must substantially interfere with a tenet or belief that is central to the religious doctrine. *Id.* (citing *Jones v. Shabazz*, 352 F. App'x 910, 913 (5th Cir.2009) (holding that a "government action or regulation only creates a substantial burden on a religious exercise if it truly pressures an adherent to significantly modify his religious behavior and significantly violate his religious beliefs")).

Once plaintiff establishes this burden, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct." *Salahuddin,* 467 F.3d at 308 (the right of prison inmates to exercise their religious beliefs is subject to valid penological concerns, including those relating to institutional security).  Once defendants carry this burden of production, "the burden remains with the prisoner to show that these articulated concerns were irrational." *Id*.  A determination of whether the refusal to permit

attendance at a religious service is "one of reasonableness, taking into account whether the particular [act] affecting [the] constitutional right ... is 'reasonably related to legitimate penological interests.' " *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)  "The law is well established that a generally applicable policy will not be held to violate a [prisoner's] right to free exercise of religion if that policy is reasonably related to legitimate penological interests." *Hall v. Ekpe*, 408 F. App'x 385, 387-388 (2d Cir. 2010) (citing cases).   When determining whether the burden imposed by the defendants is reasonable rather than irrational, a court evaluates four factors: (1) whether the action had "a valid, rational connection to a legitimate governmental objective"; (2) whether the prisoner has an "alternative means of exercising the burdened right"; (3) "the impact on guards, inmates, and prison resources of accommodating the right"; and (4) "the existence of alternative means of facilitating [the plaintiff's] exercise of the right that have only a *de minimis* adverse effect on valid penological interests." *Salahuddin*, 467 F.3d at 274 (citing *Turner v. Safley*, 482 U.S. 90-91 (1987)).

Here, plaintiff claims that while in keeplock, plaintiff requested and was denied access to three consecutive Friday services.  Defendants argue that this "limited deprivation" did not substantially burden plaintiff's religious exercise.  On a Rule 12(b)(6) motion, the Court accepts the allegations of the complaint as true and draws all inferences in favor of plaintiff.  At this stage, the Court finds that plaintiff has alleged sufficient facts to establish that missing three consecutive  Jum'ah services while housed in keeplock substantially burdens his right to attend congregate religious services.  *See Salahuddin*, 993 F.2d at 308 (2d Cir.1993) (noting prisoners have a constitutional right to participate in congregate religious services); *see also Smith v. Artus*, 2010 WL 3910086, at *12 (N.D.N.Y. 2010).

Defendants claim, without evidentiary support, that Shanley had a legitimate penological interest for denying plaintiff's requests.  Defendants assert, "Shanley checked off two boxes on the DOCCS form and wrote that 'plaintiff [w]as given a misbehavior report for threats'".  However, defendants did not annex the DOCCS form to their motion to dismiss.  Moreover, the motion does not contain an affidavit from Shanley or any other defendant.  Defendants present nothing more than the assertions of counsel in the memorandum of law in support of their "legitimate interest".  As noted previously, the record does not contain any documentary evidence regarding this issue including plaintiff's requests or Shanley's denials.  Defendants' suggestion in their memorandum of law that security concerns prompted them to deny plaintiff's requests to attend religious services is "outside the record and devoid of evidentiary support." *Samuels v. Stone*, 1999 WL 624549, at *3 (S.D.N.Y. 1999) ("[a]lthough defendants may ultimately proffer a reasonable justification for depriving plaintiff of the right to attend religious services", the Court must await a more developed factual record).  It is error to assume that prison officials were justified in limiting plaintiff's First Amendment rights simply because he was in disciplinary confinement.  *LaReau v. MacDougall*, 473 F.2d 974, 979, n. 9 (2d Cir. 1972).  On a motion to dismiss, plaintiff is afforded every reasonable inference.  It is incumbent upon prison officials to make a showing establishing whether officials had a reasonable basis for limiting the inmates participation in religious services. *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir. 1989) (citing *Mawhinney v. Henderson,* 542 F.2d 1, 3 (2d Cir. 1976) (an evidentiary hearing is necessary)). Without such evidence, the prison officials are not entitled to dismissal, at this juncture.  *See id.* (the district court should not have dismissed the plaintiff's first amendment claim without requiring prisons officials to establish the basis for the restrictions imposed).   Accordingly, the Court finds that plaintiff has stated a plausible claim for a First Amendment violation.

While defendants assert that plaintiff's claims are "conclusory", the Court disagrees.  In a case with similar factual and legal issues, the Second Circuit held:

> [W]e believe that [the plaintiff's] pleadings were sufficiently clear and specific to state a claim for which relief might be granted.  The district court's ruling that [the] allegations were "conclusory" simply is not supported by a review of [the plaintiff's] complaint and moving papers. [The plaintiff] clearly states that . . . he was precluded from attending religious services, classes, and any of the activities associated with the celebration of Ramadan, because of his placement in the limited privilege program, and his subsequent placement in punitive keeplock.  We do not believe that these allegations can be characterized as ambiguous or conclusory.

*Young*, 866 F.2d at 570.

In a case in this District with similar facts, on a motion to dismiss, Magistrate Judge Peebles concluded:

> While [ ] it may ultimately be found, based upon a more fully developed record, that this claim is legally deficient, in that plaintiff's allegations fail to establish an infringement of constitutional proportions upon his free exercise rights, and that the denials were proper based upon legitimate penological concerns, it is premature at this juncture, giving plaintiff the benefit of all inferences, to find as a matter of law that plaintiff cannot establish any set of facts sufficient to support a free exercise claim. I therefore recommend denial of defendants' motion to dismiss this cause of action.

*Gill v. Hoadley*, 261 F.Supp.2d 113, 124 (N.D.N.Y. 2003).  For these reasons, defendants' motion to dismiss plaintiff's First Amendment claims based upon the denial of plaintiff's requests to attend services while in keeplock is denied.

## B.    RLUIPA

RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion."  *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005).  RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person

residing in or confined to an institution . . .  unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a).  The principles applicable to the analysis of plaintiff's First Amendment free exercise claim are similar to those applicable to the potential RLUIPA cause of action, although the two claims are analyzed under somewhat different frameworks.  *Griffin v. Alexander,* 2011 WL 4402119, at *8-10  (N.D.N.Y. 2011) (citing *Salahuddin*, 467 F.3d at 274).  "To establish a violation of the RLUIPA a plaintiff must prove that prison officials, through their actions, have substantially burdened his or her religious exercise through actions not found to promote a compelling governmental interest advanced through the least restrictive means."  *Id.* (citation omitted).  "The RLUIPA places a higher burden on the defendants than does the First Amendment, which requires only a burden that is reasonably related to legitimate penological interests". *Id.*

In support of the motion to dismiss these claims, defendants present the same arguments asserted in support of dismissal of the First Amendment claims.  Magistrate Judge Homer recommended dismissing plaintiff's RLUIPA claims noting that the allegations failed to establish that defendants' actions were not supported by a legitimate penological interest or that the actions substantially burdened his practices.  As discussed above, the Court finds, at this stage of the litigation, that plaintiff has set forth allegations that sufficiently allege a First Amendment violation.  For the same reasons, plaintiff has sufficiently plead a claim under RLUIPA.  Thus, defendants' motion to dismiss plaintiff's RLUIPA claims as they relate to the denial of plaintiff's requests to attend services while in keeplock is denied.

**C.** **Equal Protection**

The Fourteenth Amendment to the United States Constitution provides in relevant part that "nor [shall any State] deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "In the context of prison regulations or the activity of prison guards which allegedly infringe an inmate's right to practice his or her religion, a complaint alleging a violation of the Equal Protection Clause requires an allegation that a particular group or class of individuals has been treated differently from others within the institution." *See Benjamin*, 905 F.2d at 575 (2d Cir.), *cert. denied*, 498 U.S. 951 (1990).  To establish an equal protection claim, plaintiff must show the existence of a similarly situated group who has been treated differently than plaintiff. *Brown v. City of Oneonta*, 911 F. Supp 580, 587, *modified* 106 F.3d 1125 (2d Cir. 1997).  Once having defined the appropriate class, plaintiffs must then demonstrate that they were treated differently than other people in the same class. *Pal v. Albany County Dep't of Soc. Servcs.*, 1992 WL 75046, at *5  (N.D.N.Y. 1992); *see Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir.1995) (to prove a violation of the Equal Protection Clause, a plaintiff must demonstrate that he or she was treated differently than others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class).

Plaintiff alleges that Martuscello and Shanley violated his equal protection rights, "by excluding all disciplinary keeplocked prisoners from attending weekly congregate religious services".  Plaintiff alleges that defendants failed to offer disciplinary keeplocked prisoners equal protection of the law with regard to their religious observances".  Even construing plaintiff's complaint liberally, plaintiff has not alleged how he was treated differently than others similarly situated.  Plaintiff has alleged that as a keeplocked prisoner, he was treated differently than the general population.  However, inmates in the general population are not "similarly situated" to

plaintiff. *Williams v. Bailey*, 2010 WL 3881024, at \*2 (N.D.N.Y. 2010) (the primary difference between keeplock and the general population confinement conditions is that keeplocked inmates do not leave their cells for out-of-cell programs, and are usually allowed less time out of their cells on the weekends.);  *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir.1989) (keeplock is a form of confinement restricting an inmate to his or her cell, separating the inmate from others and depriving him or her of participation in normal prison activities.); *McDowell v. Gates*, 2009 WL 3055270, at \*3 (N.D.N.Y. 2009) (keeplock segregates an inmate from other inmates in the general population of a prison and denies the inmate normal prison activities).  Accordingly, defendants' motion to dismiss plaintiffs' equal protection claim as it relates to his denial to attend services while in keeplock is granted.


**IV.     Claims Against Saltsman and Adams**

Plaintiff alleges that Saltsman and Adams violated his First Amendment rights and his rights under the RLUIPA when they failed to take him to one meeting of a Saturday religious study group.   Plaintiff objects to the portion of Magistrate Judge Homer's Report-Recommendation which stated, "Smith also contends that Saltsman and Adams violated his First Amendment rights when the failed to take him from keeplock to one meeting of a Saturday religious study group".  Plaintiff claims that at that time, he was in the general population and not confined to keeplock.  The record supports plaintiff's argument.  However, that fact does not substantively impact Magistrate Judge Homer's conclusions or the analysis herein.

Regardless of where plaintiff was housed, courts in this Circuit have consistently held that missing one or two religious service(s) does not constitute a substantial burden on an inmate's

right to the free exercise of his religion.  *Gill v. DeFrank*, 8 F. App'x 35, 37 (2d Cir. 2001); *Smith v. Graziano*, 2010 WL 1330019, at *9 (N.D.N.Y. 2010); *Hankins v. NYS Dep't of Corr. Servcs.*, 2008 WL 2019655, at *5, n. 42 (N.D.N.Y. 2008) (collecting cases).

Upon review, the Court finds no clear error or manifest injustice and adopts this portion of the Report and Recommendation.  Accordingly, plaintiff's seventh cause of action is dismissed.


**V.**     **State Law Claims[17]**

Section 24(1) of the New York State Correction Law provides in pertinent part:

> No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department [of corrections], in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

N.Y. Corr. Law § 24(1).  The statutory protection has been provided to permit correction officers to perform the demanding task of maintaining safety and security within correctional facilities "undeterred by the fear of personal liability and vexatious suits, which could substantially impair the effective performance of a discretionary function."  *Ierardi v. Sisco*, 119 F.3d 183, 187 (2d Cir. 1997).

Upon review, the Court finds no clear error or manifest injustice and adopts this portion of the Report and Recommendation.  Accordingly, plaintiff's sixth and eighth causes of action are dismissed.

---

[17] Plaintiff does not object to this portion of Magistrate Judge Homer's Report-Recommendation.

**VI.      Plaintiff's Motion to Amend**[18]

Plaintiff cross moved to amend the complaint to add New York State as a defendant. The Eleventh Amendment to the United States Constitution bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such a suit or an express statutory waiver of immunity.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 90–100 (1984).  It is well-settled that states are not "persons" under section 1983 and, therefore, that statute does not abrogate a state's Eleventh Amendment immunity.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Accordingly, the Court finds no clear error or manifest injustice and adopts this portion of the Report-Recommendation.

## CONCLUSION

It is hereby

**ORDERED** that the Report and Recommendation by United States Magistrate Judge David R. Homer (Dkt. No. 33) is rejected in part and accepted in part for the reasons set forth herein; and it is further

**ORDERED** that defendant Perlman and Leonard's motion to dismiss plaintiff's claims (Dkt. No. 24)  due to lack of personal involvement is **DENIED**; it is further

**ORDERED** that defendant Martuscello's motion to dismiss plaintiff's claims (Dkt. No. 24) due to lack of personal involvement is **DENIED** ; it is further

**ORDERED**, that defendants' motion to dismiss plaintiff's First Amendment claims and RLUIPA claims against Martuscello and Shanley (Dkt. No. 24) is **DENIED**;

---

[18] Plaintiff does not object to this portion of the Report-Recommendation.  On March 13, 2012, plaintiff filed a motion to amend the complaint. (Dkt. No. 37). That motion is not before the Court.

**ORDERED**, that defendants' motion to dismiss plaintiff's Equal Protection claims against Martuscello and Shanley (Dkt. No. 24) is **GRANTED**;

**ORDERED**, that defendants' motion to dismiss plaintiff's First Amendment and RLUIPA claims against defendants Saltsman and Adams (Dkt. No. 24) is **GRANTED**; and it is further

**ORDERED**, that defendants' motion to dismiss plaintiff's state law claims against Martuscello (Dkt. No. 24) is **GRANTED**; it is

**ORDERED**, that defendants' motion to dismiss plaintiff's negligence claims against Saltsman and Adams (Dkt. No. 24) is **GRANTED**; it is further

**ORDERED**, that plaintiff's cross-motion to amend the complaint (Dkt. No. 27) is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 19, 2012
      Albany, New York

Mae A. D'Agostino
U.S. District Judge